UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                             Case No. 18-CR-218

JOHN K. KASTE,

        Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Scott J. Campbell, Assistant United States Attorney, and the defendant, John K. Kaste, individually and by attorney Dennis P. Coffey, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in a single-count information, which alleges a violation of Title 18, United States Code, Section 4. The defendant has also been charged in a single-count indictment, which alleges a violation of Title 18, United States Code, Section 1349.

3. The defendant has read and fully understands the charge contained in the information. He fully understands the nature and elements of the crime with which he has been charged in the information, and that charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment on the charge contained in the information in open court.

5. The defendant voluntarily agrees to plead guilty to the following count set forth in the information, and below in full, as follows:

> *On or about February 25, 2014, in the State and Eastern District of Wisconsin, while having knowledge that E.Z. had committed the crime of wire fraud, in violation of Title 18, United States Code, Section 1343,*
>
> *JOHN K. KASTE*
>
> *failed to notify as soon as possible an authority under the United States that the crime had been committed and instead took affirmative steps to conceal the crime, namely, Kaste met with E.Z to help E.Z. prepare to give false testimony that E.Z. then intended to give during an examination under oath that was to be conducted by American Family Insurance's attorney, R.B., on February 27, 2014, regarding a false auto-theft loss claim that E.Z. had submitted to American Family Insurance.*
>
> *All in violation of Title 18, United States Code, Section 4.*

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

   a. As John Kaste knew, E.Z. conspired with an individual having the initials M.P., and with Kaste, to: (1) purchase a luxury vehicle with the intent to obtain auto insurance covering theft for it; (2) export it; and then (3) submit a false vehicle-theft claim to the auto insurer with intent to fraudulently obtain theft-loss reimbursement payments from the auto insurer on the false claim. The three agreed that they would split any insurance proceeds paid.

   b. As a part of that conspiracy:

   (1) On or about July 2, 2013, E.Z. purchased, using money provided by M.P., a 2013 Mercedes-Benz GL550 SUV bearing VIN 4JGDF7DE2DA261236 (the "Mercedes-Benz GL 550") from

2

(2)  Mercedes-Benz & BMW of Des Moines, for a total price of approximately $96,753.53.

(2) E.Z. obtained theft-loss insurance on the Mercedes-Benz GL 550 from American Family Insurance via an insurance agency in Neenah, Wisconsin.

(3) On or about July 26, 2013, as E.Z. and Kaste then knew, M.P. caused the Mercedes-Benz GL550 to be exported from the Port of New York and New Jersey, in the United States, to China via commercial carrier.

(4) On or about August 1, 2013, E.Z. and Kaste traveled from Wisconsin to Chicago, Illinois. There, both E.Z. and Kaste made materially false theft reports to the Chicago Police Department to the effect that the Mercedes-Benz GL550, and contents in the vehicle belonging to each of them, had been stolen in Chicago, Illinois.

(5) On or about August 1, 2013, as Kaste knew, E.Z. made a materially false loss claim to American Family Insurance, using interstate wires, via a cellphone call from Illinois to Wisconsin. Specifically, E.Z. falsely claimed that the Mercedes-Benz GL550, and contents, had been stolen from him that evening on or near Willow Street in Chicago, Illinois.

(6) On or about August 2 and August 8, 2013, during a recorded interview with American Family Insurance in-house investigators M.O. and T.H, respectively, E.Z. made false statements to the effect that the Mercedes-Benz GL550 had been stolen from him in Chicago on August 1, 2013.

(7) On or about August 8, 2013, during a recorded interview with American Family investigator T.H., Kaste made materially false statements to the effect that, on the evening of August 1, 2013, E.Z. and Kaste had tried to find the valet on Willow Street in Chicago with whom E.Z. claimed to have left the Mercedes-Benz GL 550. Kaste also falsely stated that a Toshiba laptop computer and LED lights of his were in the Mercedes-Benz GL 550 and had been stolen along with that vehicle on August 1, 2013.

(8) Or about December 4, 2013, E.Z.'s attorney and agent, D.R., on behalf of E.Z., sent a materially false proof of loss form and supporting documentation, using the United States mails, to an

3

attorney, R.B., who represented American Family Insurance, at R.B.'s office in Milwaukee, Wisconsin. E.Z. claimed a loss, after deductible, of $99,253.53, as Kaste knew.

(9) On or about December 14, 2013, E.Z.'s attorney and agent, D.R., submitted a second materially false proof of loss form and supporting documentation, using the United States mails, to R.B. at R.B.'s office in Milwaukee, Wisconsin. E.Z. again claimed a loss, after deductible, of $99,253.53, as Kaste knew.

(10) On or about February 25, 2014, Kaste met with E.Z. to help E.Z. prepare to give false testimony that E.Z. then intended to give during an examination under oath that was to be conducted by American Family Insurance's attorney, R.B., on February 27, 2014, regarding a false auto-theft loss claim that E.Z. had submitted to American Family Insurance.

    c.    As a result of the false auto-theft claim, E.Z. fraudulently caused American Family Insurance:

(1) to conduct an investigation into the claim;

(2) to hire an attorney, R.B., to assist the insurance company in conducting that investigation, and to incur approximately $4,750 in attorney's fees in connection with that investigation; and

(3) to pay approximately $600 to Enterprise Rent A Car for a rental car for E.Z. to use.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## **PENALTIES**

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries a maximum term of imprisonment of 3 years, a maximum fine of $250,000, and a mandatory special assessment of $100. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraphs 27 and 28 of this agreement.

4

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

**DISMISSAL OF INDICTMENT**

9. The government agrees to move to dismiss the indictment at the time of sentencing.

**ELEMENTS**

10. The parties understand and agree that in order to sustain the charge of misprision of a felony, in violation of Title 18, United States Code, as set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

First, that another person, E.Z., actually committed a felony;

Second, the defendant knew that the other person, E.Z., had actually committed the felony;

Third, the defendant failed to notify a United States law enforcement authority as soon as possible an authority that the crime had been committed; and

Fourth, the defendant took affirmative steps to conceal the other person's felony.

**SENTENCING PROVISIONS**

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The

5

parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

### Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

### Base Offense Level

16. The parties agree to recommend to the sentencing court that, under Sentencing Guidelines Manual §§ 2X4.1 and 2B1.1, the applicable base offense level for the misprision offense charged in the information is 6.

17. The parties agree that this base offense level of 6 is properly calculated as follows: (a) the base offense level for a misprision offense, under Section 2X4.1 is a level that is 9 levels lower than the offense level for the underlying offense, but in no event less than 4 or

6

more than 19; and (b) the offense level for the underlying fraud offense, under Sentencing Guidelines Manual § 2B1.1, is 15, which corresponds to a base offense level of 7 and an 8-level increase corresponding to an intended loss amount of more than $95,000.

## Acceptance of Responsibility

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility.

## Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters that might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

21. The parties agree to recommend a sentence of probation, for a term of two years.

## Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court

7

will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## **FINANCIAL MATTERS**

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, for any period for which he still owes restitution in this case, and upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

8

### Special Assessment

26. The defendant agrees to pay the special assessment in the amount of $100 before or at the time of sentencing.

### Restitution

27. The defendant agrees to pay restitution in the amount of $4,750 to American Family Insurance to reimburse American Family Insurance for the approximately $4,750 in attorney's fees that the parties stipulate the insurance company incurred in connection with investigating E.Z.'s false auto-theft claim.

28. The parties agree to advise the sentencing court of any restitution amounts that the defendant pays before sentencing.

### DEFENDANT'S COOPERATION

29. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely at any trials or proceedings in this and related matter, including any criminal trial of E.Z., if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## DEFENDANT'S WAIVER OF RIGHTS

30. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

   e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

31. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights.

The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

32. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

33. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### **Further Civil or Administrative Action**

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

38. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### Further Action by Internal Revenue Service

39. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

40. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's

agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

41. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 1/28/19

JOHN K. KASTE
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 1/28/19

DENNIS P. COFFEY
Attorney for Defendant

For the United States of America:

Date: 2/5/19

for MATTHEW D. KRUEGER
United States Attorney

Date: 2/5/19

SCOTT J. CAMPBELL
Assistant United States Attorney

14